**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CG TECHNOLOGY DEVELOPMENT, LLC et al., <br><br> Plaintiffs, <br><br> vs. <br><br> BWIN.PARTY (USA), INC. et al., <br><br> Defendants. | 2:16-cv-00871-RCJ-VCF <br><br> **ORDER** |

This case arises out of the alleged infringement of eleven patents relating to online gambling. Pending before the Court is a Motion to Dismiss (ECF No. 31).

## I.   FACTS AND PROCEDURAL HISTORY

Plaintiff CG Technology Development, LLC ("CG Tech") is a wholly owned subsidiary of non-party CG Technology, L.P. ("CG"), which provides technology solutions for lottery, gaming, racing, and sports wagering. (Am. Compl. ¶ 2, ECF No. 23).  "[CG] specializes in providing secure, scalable, mobile technology and risk management solutions to integrated resorts, gaming partners, race and sports books, and lottery industries." (*Id.*).  CG and CG Tech produce mobile phone applications for real-money and social casino gaming, as well as account-based wagering systems. (*Id.*).

CG Tech is the assignee of U.S. Patent No. RE39,818. Plaintiff Interactive Games Limited ("IG Ltd") is the assignee of U.S. Patent Nos. 6,899,628; 6,979,267; 8,342,924; 7,029,394; and 9,111,417. Plaintiff Interactive Games LLC ("IG LLC") is the assignee U.S. Patent Nos. 7,534,169; 8,771,058; 8,814,664; 9,355,518; and 9,306,952. Plaintiffs have sued Defendants Bwin.Party Digital Entertainment, PLC ("Bwin"), Bwin.Party (USA), Inc. ("Bwin USA"), and Bwin.Party Entertainment (NJ), LLC ("Bwin NJ") in this Court for direct and willful infringement via operation of its various online casino games. Bwin USA and Bwin NJ (collectively, "Movants") have asked the Court to dismiss the infringement claims as to the '058, '664, '518, and '952 Patents (collectively, "the Patents") based on unpatentability under 35 U.S.C. § 101. The Patents are all owned by IG LLC.[1]

## II.     LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell*

---

[1] The Court has already ruled in a related case brought by Plaintiffs against another defendant that the claims of the '924, '267, '628, '394, '417, and '169 Patents asserted in that case were invalid as being directed to unpatentable subject matter under § 101. (*See* Order, ECF No. 36 in *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 2:16-cv-857). The Court ruled that the '818 Patent was not invalid under § 101 and gave Plaintiffs leave to amend to allege infringement of claims not depending from the invalid claims. (*See id.*).

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts pertaining to his own case making a violation "plausible," not just "possible." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009) (citing *Twombly*, 550 U.S. at 556) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, under the modern interpretation of Rule 8(a), a plaintiff must not only specify or imply a cognizable cause of action (*Conley* review), but also must allege the facts of his case so that the court can determine whether the plaintiff has any basis for relief under the cause of action he has specified or implied, assuming the facts are as he alleges (*Twombly-Iqbal* review). Put differently, *Conley* only required a plaintiff to identify a major premise (a cause of action), but *Twombly* and *Iqbal* require a plaintiff also to allege minor premises (facts of the plaintiff's case) such that the syllogism showing liability is logically complete and that liability necessarily, not only possibly, follows (assuming the allegations are true).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted). Similarly, "documents

whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Moreover, under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986). Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

## III.  ANALYSIS

Movants ask the Court to dismiss the infringement claims, arguing that the Patents are patent-ineligible under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). An inventor may obtain a patent on "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, the Supreme Court "ha[s] long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp.*, 134 S. Ct. at 2354 (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The driving concern behind this exclusionary principle is one of pre-emption— "'that patent law not inhibit further discovery by improperly tying up the future use of' these building blocks of human ingenuity." *Id.* (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1301 (2012)). Notably, though, "an invention is not rendered ineligible for patent simply because it involves an abstract concept," *id.* (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)); "[a]pplications of such concepts to a new and useful end . . .

remain eligible for patent protection," *id.* (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)) (internal quotation marks and alterations omitted).  In other words, "in applying the § 101 exception, [courts] must distinguish between patents that claim the buildin[g] block[s] of human ingenuity and those that integrate the building blocks into something more, thereby transform[ing] them into a patent-eligible invention." *Id.* (quoting *Mayo Collaborative Servs.*, 132 S. Ct. at 1294, 1303) (internal quotation marks omitted; second through fourth alterations in original).

The Supreme Court has adopted a two-step test for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* at 2355.  First, a court determines whether the claim is "directed to one of those patent-ineligible concepts." *Id.*  If not, the analysis ends.  If so, however, a court must consider the elements of each claim "both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1298).  Step two is "a search for an '"inventive concept"'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294).  Such a transformation requires "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* (quoting *Mayo*, 132 S. Ct. at 1294) (alterations in original).

A district court may determine whether a patent is eligible under § 101 at the dismissal stage. *See generally Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) (affirming such a dismissal).  Plaintiffs argue that to invalidate a patent under § 101 requires clear and convincing evidence.  They cite two published cases to support their argument.

In the first case, however, the only mention of the requirement of a standard of clear and convincing evidence was in a concurring opinion. *See CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1304–05 (Fed. Cir. 2013) (Rader, C.J., concurring in part and dissenting in part). In a separate concurring opinion, Judge Lourie determined that patent claims should receive a presumption of validity when § 101 is raised as a basis for invalidity. *Id.* at 1284. However, there was no majority opinion on the issue, and as Chief Judge Rader observed, "[t]hough much is published today discussing the proper approach to the patent eligibility inquiry, nothing said today beyond our judgment has the weight of precedent." *Id.* at 1292 n.1 (Rader, C.J., concurring in part and dissenting in part). Furthermore, the Supreme Court affirmed the Court of Appeals' decision in *Alice Corp.*, but it did not discuss the issues of presumption of validity and burden of proof in its § 101 analysis. *See* 134 S. Ct. at 2354–60.

In the other case, the Court of Appeals held that "any attack on an issued patent based on a challenge to the eligibility of the subject matter must be proven by clear and convincing evidence." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1342 (Fed. Cir. 2013). However, *Ultramercial* lacks precedential effect because the Supreme Court vacated the judgment in the case "for further consideration in light of *Alice*." *WildTangent, Inc. v. Ultramercial, LLC*, 134 S. Ct. 2870 (2014). On remand, the Court of Appeals reconsidered the validity issue in light of *Alice Corp.* and affirmed the district court's ruling dismissing the patent claims while not discussing any presumption of validity or standard of clear and convincing evidence. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716–17, 720 (Fed. Cir. 2014). In a concurring opinion, Judge Mayer stated that "no presumption of eligibility should attach when assessing whether claims meet the demands of section 101." *Id.* (Mayer, J., concurring).

As these cases demonstrate, and as several courts have noted, there is uncertainty as to whether a presumption of invalidity or a clear and convincing standard applies in § 101 challenges. *See, e.g.*, *Esoterix Genetic Labs. LLC v. Qiagen Inc.*, 133 F. Supp. 3d 349, 355 (D. Mass. 2015); *Affinity Labs of Texas, LLC v. DirecTV, LLC*, 109 F. Supp. 3d 916, 932 (W.D. Tex. 2015); *Communique Lab., Inc. v. Citrix Sys., Inc.*, 151 F. Supp. 3d 778, 786–87 (N.D. Ohio 2015). The Court agrees with other district courts that the most reasonable approach is to apply a clear and convincing standard to invalidity defenses under § 101 when the analysis involves underlying factual issues but not when it involves purely legal issues. *See Communique Lab*, 151 F. Supp. 3d at 786–87; *Affinity Labs*, 109 F. Supp. 3d at 932–33. In the present context, where the Court is tasked with determining the patentability of claims as a matter of law under *Alice Corp.* based on the nature of the claims themselves, the content of which is not disputed, standards of proof are inapposite. Unlike with factual issues, a court conducting pure legal analysis does not ask itself "how sure" it is of the result.

### A. The '058 Patent

Movants argue Claim 19 is representative of the '058 Patent and that it is invalid under *Alice Corp.* More importantly, Claim 19 is the only claim Plaintiffs have accused Defendants of infringing. (*See* Am. Compl. ¶ 113–18). Claim 19 reads in full:

> A computer system comprising:
>
> a processor operable to execute a set of instructions; and
>
> a memory having stored thereon the set of instructions, in which the set of instructions, when executed by the processor, cause the computer system to perform a method comprising:
>
> > determining a first location of a mobile gaming device,
> >
> > determining a first game configuration associated with the first location,

>    generating a first game outcome using the first game configuration,
>
>    determining a first payout associated with the first game outcome,
>
>    crediting a player account with a first amount based on the first payout,
>
>    determining a second location of the mobile gaming device, wherein the second location is different from the first location,
>
>    determining a second game configuration associated with the second location, wherein the second game configuration is different from the first game configuration,
>
>    generating a second game outcome using the second game configuration,
>
>    determining a second payout associated with the second game outcome, and
>
>    crediting the player account with a second amount based on the second payout.

U.S. Patent No. 8,771,058 col. 62, ll. 1–27.  The claim consists of a two-element apparatus (a generic processor and a generic memory) wherein the memory contains instructions to execute a ten-element method. *See id.*

 The process itself is one that can largely be conducted in the abstract.  The Court of Appeals has held that collecting, recognizing, and storing data is an abstract idea because it is a concept that is "undisputedly well-known" and "humans have always performed these functions." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).  Determining game configurations (based on some set of rules, e.g., an algorithm, list, etc.), generating game outcomes based on the configurations (based on some set of rules, e.g., an algorithm, list, etc.), determining payouts based on game outcomes (based on some set of rules, e.g., an algorithm, list, etc.), and crediting players based on payouts (accounting) are abstract ideas that can be conducted in one's mind.  At least one aspect of the process, however, requires activity outside of one's mind: determining the physical location of

the mobile gaming device. Claim 19 is limited to using a computer system to locate a mobile gaming device. The specifications note that location verification technology may be network- or satellite-based and may use methods such as geo-fencing or triangulation. *See* U.S. Patent No. 8,771,058 col. 17, ll. 16–29. Although the invention disclaims any limitations based on these methods, *see id.*, determining an actual, physical location is not an abstract concept. One cannot perform the function in one's head. Claim 19 does not simply instruct a practitioner to use a computer to perform calculations using pre-existing location data; it requires as an essential step that the computer actually determine the location of the mobile gaming device.

*Alice Corp.* stands for the proposition that a method directed to an unpatentable abstract concept does not become patentable simply because the practitioner is directed to use a generic computer to perform it or because the invention is claimed as a generic computer apparatus used to perform the unpatentable method. But it is unpatentable methods that are impugned under *Alice Corp.* Methods utilizing a generic computer apparatus are not per se infirm under *Alice Corp.*; it is just that the bare addition of a generic computer will not make an otherwise unpatentable method patentable. Here, Claim 19 requires the location of a mobile gaming device via the computer system. That is concrete enough to take the claim outside the scope of *Alice Corp.*'s "abstract idea" exception to patentability under § 101. The location of the mobile gaming device via computer is a limited, concrete, physical task.[2] Claim 19 does not monopolize purely abstract concepts or all of their applications. Even if the act of locating a remote object could be considered an abstract idea—and it probably can't be—Claim 19 does not cover all of

---

2 Even the location of the mobile gaming device via closed circuit camera or via spies with telephones would be a concrete, physical task. Movants argue that similar methods of location-based gaming options, such as providing certain gaming options only in certain areas of casinos straddling the California–Nevada border, are well known and long-practiced, but that goes to anticipation or obviousness under §§ 102 or 103, respectively, not patentability under § 101.

its applications, but only the limited application of determining the location of a mobile gaming device using a computer. The computer system in Claim 19 is not applied purely in its capacity as a generic computing device, i.e., as a substitute for a human mind, but at least in part as a communication tool. The fact that the computer system is also used to perform functions that are abstract (determining game outcomes and accounting for winnings) does not render the claim unpatentable. The integration of the non-abstract function of determining the mobile gaming device location via computer with the other processes for which the computer is used renders the invention as a whole patentable even if certain elements might not be separately patentable. The Court therefore denies the motion to dismiss Claim 19 of the '058 Patent under § 101.

### B. The '664 Patent

Movants argue Claim 17 is representative of the '058 Patent and that it is invalid under *Alice Corp.* More importantly, Claim 17 is the only claim Plaintiffs have accused Defendants of infringing. (*See* Am. Compl. ¶ 126–34). Claim 17 reads in full:

An apparatus comprising:

a non-transitory medium having stored thereon a plurality of instructions that when executed by a computing device, cause the computing device to:

determine that a mobile device associated with a first player is located in a first location that is designated as a non-monetary, points only wagering area;

in response to determining that the mobile device is located in the first location, automatically enable points wagering and automatically disabling monetary wagering from the mobile device while the mobile device remains in the first location;

receive, from the mobile device, a challenge by the first player, in which the challenge identifies an amount of points selected by the player and a second player selected by the player against whom to place the challenge;

in response to receiving the challenge, identify the challenge to the second player;

> receive an acceptance of the challenge from the second player;
>
> in response to receiving the acceptance, form a wager between the first player and the second player based on the challenge;
>
> adjust points in an account of a winning player of the challenge in response to determining an outcome of the challenge;
>
> determine mobile device is located in a second location that is designated as a monetary wagering area; and
>
> in response to determining that the mobile device is located in the second location, automatically enable monetary wagering and automatically disable points wagering from the mobile device while the mobile device remains in the second location;
>
> wherein the second location is geographically different from the first location.

U.S. Patent No. 8,814,664 col. 32, ll. 1–38.  The claim consists of a single-element apparatus (a generic "non-transitory medium," i.e., firmware) containing instructions to execute a ten-element method. *See id.*  The Court finds that this claim is not invalid under § 101.  As with Claim 19 of the '058 Patent, the requirement in Claim 17 of the '664 Patent of physically locating a mobile device via computer to determine the game configuration (monetary versus non-monetary) makes the process sufficiently concrete to survive *Alice Corp.*

### C. The '518 Patent

Movants argue Claim 1 is representative of the '518 Patent and that it is invalid under *Alice Corp.*  Plaintiffs have accused Defendants of infringing Claims 1 and 9 of the '518 Patent. (*See* Am. Compl. ¶ 144–48).[3]  Claim 1 reads in full:

---

[3] Although Plaintiffs allege Defendants have also infringed Claim 1 of the '518 Patent, they have only made factual allegations as to Claim 9.  The Court will address both claims under § 101, because the analysis requires only an examination of the patent claims themselves, not the allegations of infringement.

>A method for supporting multiple users in an electronic gaming system, the method comprising:
>
>establishing for a user of the electronic gaming system a user profile on a data storage device, wherein the user accesses the electronic gaming system via an electronic device;
>
>receiving by at least one processor via a communications network from the electronic device location data of the electronic device, wherein:
>
>>the electronic device comprises sensor for detecting location,
>>the electronic device obtains the location data from the sensor, and
>>
>>the electronic device communicates the location data via the communications network;
>
>recognizing by the at least one processor an occurrence of an event;
>
>updating by the at least one processor the user profile in response to the event,
>
>>wherein recognizing the occurrence of the event comprises determining, based on the location data, an existence of the user in a particular location, and
>>
>>>wherein updating the user profile in response to the event comprises storing the particular location; and
>
>based on determining the existence of the user in the particular location, initiating by the at least one processor a gaming session, wherein initiating the gaming session includes communicating via the communications network information to the electronic device, wherein the information causes the electronic device to present via a display of the electronic device a gaming environment to the user or to present via the display to the user a modified gaming environment that indicates to the user a last gaming activity of a plurality of gaming activities accessed by the user during a prior gaming session, a determination as to whether to display the gaming environment or the modified gaming environment being based on whether there is or is not a stored indication of a last one of the plurality gaming activities accessed by the user during the prior gaming session.

U.S. Patent No. 9,355,518 col. 26, l. 62–col. 27, l. 35.  The claim is a five-element method claim, wherein the third element contains three sub-elements and the fourth element contains two sub-elements which further limit the third and fourth elements, respectively. *See id.*  The Court finds that this claim is not invalid under § 101.  As with Claim 19 of the '058 Patent, the requirement

in Claim 1 of the '518 Patent of physically locating an electronic device via computer as a trigger to present a visual display of a gaming environment makes the process sufficiently concrete to survive *Alice Corp.* Claim 9 is for an apparatus to perform the method of Claim 1. *See id.* col. 27, l. 66–col. 28, l. 38. For the same reason, it is not unpatentable under § 101.

### D.     The '952 Patent

Movants argue Claim 1 is representative of the '952 Patent and that it is invalid under *Alice Corp.* More importantly, Claim 1 is the only claim Plaintiffs have accused Defendants of infringing. (*See* Am. Compl. ¶ 156–61). Claim 1 reads in full:

> An apparatus, comprising:
>
> at least one processor; and
>
> a memory that stores instructions which, when executed by the at least one processor, direct the at least one processor to:
>
>> determine a plurality of selectable betting parameters for a wager in a game,
>>
>>> each selectable betting parameter comprising a game parameter that affects an outcome of a bet by a first user in the game,
>>>
>>> the plurality of selectable betting parameters comprising at least a first selectable betting parameter and a second selectable betting parameter,
>>>
>>> the game being played by at least one user using a corresponding at least one wireless gaming terminal associated with each of the at least one user, each of the at least one wireless gaming terminal having a wireless network interface operable to transmit and receive gaming information, the at least one user comprising the first user,
>>>
>>> in which each wireless gaming terminal is in communication with a location determination system that determines a location of the wireless gaming terminal, each wireless gaming terminal further having a user interface for interacting with a corresponding user of the wireless gaming terminal to implement a game, wherein the game depends on the determined location;

    determine a plurality of different locations in a gaming area,

      each location corresponding to at least one of the plurality of selectable betting parameters,

      the plurality of locations comprising at least a first location corresponding to the first betting parameter and a second location corresponding to the second betting parameter,

      in which the first location is different from the second location,

      in which the first selectable betting parameter is different from the second selectable betting parameter such that a selection of the first selectable betting parameter would cause a different result for the bet than a selection of the second selectable betting parameter;

    during the game, determine a location of at least one wireless gaming terminal corresponding to each of the at least one user in the game, in which the act of determining the location of the at least one wireless gaming terminal comprises determining a location of the first user by determining a location of a first wireless gaming terminal of the first user;

    determine at least one of the plurality of selectable betting parameters associated with the at least one user in the game based on the determined location of the at least one user, in which the act of determining at least one of the plurality of selectable betting parameters comprises determining at least one of the plurality of selectable betting parameters associated with the first user based on the determined location of the first user; and

    determine the outcome of the bet based at least in part on the determined at least one betting parameter in accordance with one or more predetermined rules of the game.

U.S. Patent No. 9,306,952 col. 34, l. 51–col. 35, l. 48.  The claim consists of a two-element apparatus (a generic processor and a generic memory) wherein the memory contains instructions to execute a five-element method. *See id.*  The Court finds that this claim is not invalid under § 101.  As with Claim 19 of the '058 Patent, the requirement in Claim 1 of the '952 Patent of physically locating wireless gaming terminals via computer to determine one or more betting parameters makes the process sufficiently concrete to survive *Alice Corp.*

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 31) is DENIED.

IT IS SO ORDERED.

DATED: This 18th day of October, 2016.

_____
ROBERT C. JONES
United States District Judge