# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| CG TECHNOLOGY DEVELOPMENT, LLC et al.,<br><br>          Plaintiffs,<br><br>    vs.<br><br>BWIN.PARTY (USA), INC. et al.,<br><br>          Defendants. | 2:16-cv-00871-RCJ-VCF<br><br>**ORDER** |

This case arises out of the alleged infringement of eleven patents relating to online gambling.  Pending before the Court are a motion to reconsider and a motion to dismiss.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff CG Technology Development, LLC ("CG Tech") is a wholly owned subsidiary of non-party CG Technology, L.P. ("CG"), which provides technology solutions for lottery, gaming, racing, and sports wagering. (First Am. Compl. ¶ 2, ECF No. 23).  "[CG] specializes in providing secure, scalable, mobile technology and risk management solutions to integrated resorts, gaming partners, race and sports books, and lottery industries." (*Id.*).  CG and CG Tech produce mobile phone applications for real-money and social casino gaming, as well as account-based wagering systems. (*Id.*).

CG Tech is the assignee of U.S. Patent No. RE39,818.  Plaintiff Interactive Games Limited ("IG Ltd") is the assignee of U.S. Patent Nos. 6,899,628; 6,979,267; 8,342,924; 7,029,394; and 9,111,417.  Plaintiff Interactive Games LLC ("IG LLC") is the assignee of U.S. Patent Nos. 7,534,169; 8,771,058; 8,814,664; 9,355,518; and 9,306,952.  Plaintiffs have sued Defendants Bwin.Party Digital Entertainment, PLC ("Bwin"), Bwin.Party (USA), Inc. ("Bwin USA"), and Bwin.Party Entertainment (NJ), LLC ("Bwin NJ") in this Court for direct and willful infringement via operation of its various online casino games.  Bwin USA and Bwin NJ asked the Court to dismiss the infringement claims as to the '058, '664, '518, and '952 Patents based on unpatentability under 35 U.S.C. § 101.[1]  The Court denied the motion.  Defendants have asked the Court to reconsider and have separately asked the Court to dismiss the claims of infringement of the '818, '058, '664, '518, and '952 Patents for failure to state a claim.

## II.   DISCUSSION

### A.   Motion to Dismiss

Plaintiffs argue that Rule 12(g) prevents the present motion due to Defendants' failure to raise the challenges brought now in their previous motion under Rule 12(b).  Plaintiffs are correct.  A party waives challenges omitted from a first motion under Rule 12, "[e]xcept as provided in Rule 12(h)(2) or (3)." *See* Fed R. Civ. P. 12(g)(2).  Rule 12(h)(2)[2] provides that the defense of failure to state a claim, *inter alia*, may be raised in a pleading, at trial, or in a motion a

---

1 The Court has already ruled in a related case brought by Plaintiffs against another defendant that the claims of the '924, '267, '628, '394, '417, and '169 Patents asserted in that case were invalid under § 101. (*See* Order, ECF No. 36 in *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 2:16-cv-857).  The Court ruled that the '818 Patent was not invalid under § 101 and also gave Plaintiffs leave to amend to allege infringement of claims not depending from the invalid claims. (*See id.*).

2 Rule 12(h)(3), which concerns subject matter jurisdiction, is inapplicable here.

cfor judgment on the pleadings under Rule 12(c). *See* Fed. R. Civ. P. 12(h)(2).  Defendants have not made a motion under Rule 12(c), nor can the Court so treat the present motion, because Defendants have not yet answered, and such a motion may only be made after the pleadings are closed. *See* Fed. R. Civ. P. 12(c).  Defendants argue that judicial efficiency counsels the early dismissal of the claims, but the Court may not countermand the Civil Rules in the name of judicial efficiency.  Rather, the Court agrees with the reported opinion of a sister district court that a successive motion to dismiss is not permitted, even where a complaint is amended after the previous motion is filed (which is not even the case here), so long as the basis for the latter motion was available by virtue of the operative version of the complaint at the time of the previous motion. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 135 F. Supp. 3d 1059, 1070–71 (N.D. Cal. 2015) (Koh, J.).  The Court denies the motion to dismiss.

### B.    Motion to Reconsider

Defendants argue that the Court should have ruled the '058, '664, '518, and '952 Patents to be patent-ineligible under § 101.  They argue that the Court applied the concept of abstractness too narrowly at the first *Alice Corp.* step.  They also argue that the Court's ruling is inconsistent with its ruling in Case No. 2:16-cv-857, finding the '924, '267, '628, '394, '417, and '169 Patents to be invalid under § 101.

Commentators have noted the lack of clarity in the test for abstractness challenges under § 101. *See, e.g.*, Shane D. Anderson, *Software, Abstractness, and Soft Physicality Requirements*, 29 Harvard J. L. & Tech. 567, 572–74 (2016).  The *Alice Corp.* Court ruled that the implementation of an abstract idea (such as an algorithm) onto a general purpose computer did not provide a necessary "inventive concept" to make the use of the idea patentable, but the Court

did not define "abstract idea" apart from giving examples from prior case law. Brady P. Gleason, *Don't Give Up Section 101, Don't Ever Give Up*, 65 Cath. U. L. Rev. 773, 790 (2016).

Plaintiffs argue that the *Alice Corp.* Court "found that a 'physical' implementation of an abstract idea by a computer was 'beside the point.'" (Mot. Recon. 3 (citing *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2358–59 (2014))). What the *Alice Corp.* Court found to be "beside the point," however, was not the physical implementation of abstract ideas generally, but rather the simple fact that a generic computer is itself a physical object. *See id.* That fact did nothing to change the fact that the physical computer was being used purely in its capacity as a generalized computing device to perform abstract calculations. *See id.* at 2359. In the present case, the geolocation step of the relevant claims adds a physical component that is lacking in *Alice Corp.*-type claims. The geolocation step is a concrete task requiring physical activity beyond that necessarily attendant to the computing (thinking) capabilities of a generic computer. Plaintiffs also read a rule into the Court of Appeals' dictum in *Affinity Labs. of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) that the Court does not perceive, and which would conflict with decades-old case law preserving the distinction between the tests for patentability and anticipation. *See infra.* In *Affinity Labs.*, the Court of Appeals invalidated a patent that "claim[ed] the general concept of out-of-region delivery of broadcast content through the use of conventional devices, without offering any technological means of effecting that concept." *Id.* at 1262. Also, "the claims [we]re directed not to an improvement in cellular telephones but simply to the use of cellular telephones as tools in the aid of a process focused on an abstract idea. That is not enough to constitute patentable subject matter." *Id.* The Court of Appeals' comments concerning "longstanding business practice" were made in recounting the

holding of the lower court and a similar holding of the Court of Appeals in a previous case concerning the patentability of business practices.

The Court of Appeals has addressed abstractness since *Alice Corp.* In *In re Smith*, the Court of Appeals affirmed the rejection of a patent claim directed to a casino game under *Alice Corp. See* 815 F.3d 816, 819 (Fed. Cir. 2016). The applicant had attempted to patent a method for dealing a card game while accepting and paying bets, as in a casino. *See id.* at 817–18.[3] Applying the two-step test under *Alice Corp.*, the Court of Appeals first found that "rules for conducting a wagering game" constituted an abstract idea. *See id.* at 818–19. In affirming the examiner's rejection of the claim, the Patent Trial and Appeals Board had correctly noted that, "[a] wagering game is, effectively, a method of exchanging and resolving financial obligations based on probabilities created during the distribution of the cards." *Id.* (alteration in original). Methods of conducting wagering games were just as abstract as methods of exchanging financial obligations and hedging risk. *Id.* at 819 (citing *Alice Corp.*, 134 S. Ct. 2347; *Bilski v. Kappos*, 561 U.S. 593 (2010)). The Court of Appeals noted that its "own cases have denied patentability of similar concepts as being directed towards ineligible subject matter." *Id.* (citing *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (finding offer-based price optimization abstract), *cert. denied*, 136 S. Ct. 701 (2015); *Planet Bingo, LLC v. VKGS LLC*, 576 Fed. Appx. 1005, 1007–08 (Fed. Cir. 2014) (determining that methods of managing a game of bingo were abstract ideas)). The Court of Appeals then found that the claim contained no inventive concept sufficient to transform the abstract idea into a patent eligible application. *See id.* The Court of Appeals rejected the argument that the requirement of shuffling and dealing

---

3 Although the patent application was titled "Blackjack Variation," the claim at issue appears to have been directed to a variation of baccarat. *See id.*

physical playing cards was sufficient, because, like the recitation of computer implementation in

*Alice Corp.*, shuffling and dealing a standard deck of cards was a "purely conventional step[]."

*See id.*

The Court has not changed its opinion that the best test for abstractness under the first

*Alice Corp.* step is whether the invention can be practiced entirely in the mind of a sufficiently

intelligent person:

> Such a method that can be performed by human thought alone is merely an abstract
> idea and is not patent-eligible under § 101. Methods which can be performed
> entirely in the human mind are unpatentable not because there is anything wrong
> with claiming mental method steps as part of a process containing non-mental steps,
> but rather because computational methods which can be performed entirely in the
> human mind are the types of methods that embody the "basic tools of scientific and
> technological work" that are free to all men and reserved exclusively to none.

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011) (citing

*Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)) (footnote omitted). This interpretation comports

with nearly half a century of case law. *See id.*; *Parker v. Flook*, 437 U.S. 584 (1978); *Gottschalk*,

409 U.S. 63. The Supreme Court has held, however, that processes containing one or more steps

that can be conducted in the abstract (such as mathematical formulae) are not unpatentable under

§ 101 so long as it is not the abstract concepts themselves that are sought to be patented and the

process sought to be patented is not abstract as a whole. *See Diamond v. Diehr*, 450 U.S. 175,

191–92 (1981) (refusing to invalidate a claim for a method of molding rubber simply because the

claim recited mathematical formulae). As this Court has noted, the cases stand for the

proposition that the recitation of a generic computer does not make patentable a process that is

otherwise unpatentable under § 101, but not for the putative inverse proposition that the

recitation of a generic computer makes unpatentable a process that is otherwise patentable under

§ 101. *See id.* at 187 ("[A] claim drawn to subject matter otherwise statutory does not become

nonstatutory simply because it uses a mathematical formula, computer program, or digital computer. . . . It is now commonplace that an *application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection."); Donald S. Chisum, 1 Chisum on Patents § 1.03[6], at 1-182 (2016) ("[I]n *Alice Corp.* . . . the Court held that attaching a requirement of computer implementation to method claims . . . would not render the claims patent eligible if the method was otherwise a patent ineligible abstract idea.").

The *Diamond* Court also made clear that the tests for abstractness and anticipation are distinct, citing the clearly expressed intent in the Senate Report on the 1952 Patent Act that § 101's "novelty" requirement was to be interpreted by way of the standards elucidated under § 102:

> In determining the eligibility of respondents' claimed process for patent protection under § 101, their claims must be considered as a whole.  It is inappropriate to dissect the claims into old and new elements and then to ignore the presence of the old elements in the analysis.  *This is particularly true in a process claim because a new combination of steps in a process may be patentable even though all the constituents of the combination were **well known and in common use** before the combination was made.  The "novelty" of any element or steps in a process, or even of the process itself, is of no relevance in determining whether the subject matter of a claim falls within the § 101 categories of possibly patentable subject matter.*
>
> It has been urged that novelty is an appropriate consideration under § 101.  Presumably, this argument results from the language in § 101 referring to any "new and useful" process, machine, etc.  Section 101, however, is a general statement of the type of subject matter that is eligible for patent protection "subject to the conditions and requirements of this title."  Specific conditions for patentability follow and § 102 covers in detail the conditions relating to novelty.  The question therefore of whether a particular invention is novel is "wholly apart from whether the invention falls into a category of statutory subject matter."  The legislative history of the 1952 Patent Act is in accord with this reasoning.
>
>      . . . .
>
> In this case, it may later be determined that the respondents' process is not deserving of patent protection because it fails to satisfy the statutory conditions of novelty under § 102 or nonobviousness under § 103.  A rejection on either of these

grounds does not affect the determination that respondents' claims recited subject matter which was eligible for patent protection under § 101.

*Diamond*, 450 U.S. at 188–91 (citations and footnotes omitted; emphases added).  For this reason, the Court rejected Plaintiffs' argument that the claim at issue in this case is abstract because its only physical aspect not relying on a computer's generalized computing capabilities (the geolocation step) was (allegedly) well-known or long-practiced.  The Court has found no cases that abrogate the clearly expressed rule in *Diamond*.  Notably, the *Alice Corp.* Court cited *Diamond* twice without criticism. *See Alice Corp.*, 134 S. Ct. at 2354 (citing *Diamond*, 450 U.S. at 187) (reaffirming that "an invention is not rendered ineligible for patent simply because it involves an abstract concept"); *id.* at 2355 n.3 (citing *Diamond*, 450 U.S. at 188) (quoting the rule that "patent claims must be considered as a whole").  Given the *Alice Corp.* Court's conspicuous declination to criticize *Diamond* while twice citing thereto in a case that implicated *Diamond*'s core holding, this Court is heavily disinclined to interpret any ambiguous language by the Supreme Court (much less the Court of Appeals) as having abrogated the rule of that case.[4]

---

4 It is important to note that *Alice Corp.* did not create the abstractness bar to patentability but rather introduced new language to apply an old rule, just as other cases in this line had done. Some form of the two-step test for the patentability of processes directed to abstract concepts had been in use for at least 36 years before *Alice Corp.* was decided. *See In re Freeman*, 573 F.2d 1237, 1245 (C.C.P.A. 1978) ("First, it must be determined whether the claim directly or indirectly recites an 'algorithm' in the *Benson* sense of that term . . . . Second, the claim must be further analyzed to ascertain whether in its entirety it wholly preempts that algorithm.").  The Court of Appeals adjusted the test in 2008. *See In re Bilski*, 545 F.3d 943, 957 (Fed. Cir. 2008) (holding that non-preemption under the second step of what was then called the "*Freeman–Walter–Abele* test" requires that the claim be "tied to a particular machine or bring[] about a particular transformation of a particular article").  The *Alice Corp.* Court noted that it had previously held that the "machine-or-transformation test" was not the *sine qua non* of the patentability of process claims directed to abstract ideas under § 101, but that the crux of the test was the addition of an "inventive concept." *See Alice Corp.*, 134 S. Ct. at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)).

The Supreme Court's and Court of Appeals' use of the word "conventional" appears to stem from *Parker*.  In that case, the Court ruled that "[t]he notion that post-solution activity, no matter how conventional or obvious in itself, can transform an unpatentable principle into a patentable process exalts form over substance." *Parker*, 437 U.S. at 590.  In other words, a process utilizing an abstract principle is not patentable under § 101 simply because the inventor instructs the practitioner to apply the result of the abstract activity, i.e., such as the application of the use of the Pythagorean theorem to surveying techniques, *see id.*, or the dealing of cards according to abstract rules, *see In re Smith*, 815 F.3d at 819.  The *Parker* Court did not rule that a concrete step within a method claim is necessarily insufficient in combination with the abstract steps to render an invention patent-eligible under § 101 when considered as a whole simply by virtue of the fact that the concrete step is "conventional."  The crux of the *Parker* "conventionality" rule is that the mere post-solution concrete application of abstract activity is not enough to render an invention as a whole non-abstract.  In the present claims, the non-abstract geolocation step (whether or not "conventional") is not simply appended to the claim as an application of completed abstract activity.  The claim does not instruct the practitioner to conduct some abstract calculation and then use the result to geolocate a device.  To the contrary, the result of the geolocation step here is utilized as an *input* for at least some of the abstract computer-based activity.

Finally, the Court's ruling is not inconsistent with its previous ruling that the '924, '267, '628, '394, '417, and '169 Patents are invalid under § 101, because the relevant claims there contained no geolocation step, as here, but involved nothing more than the utilization of generic computing devices for their generic computing capabilities.

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Reconsider (ECF No. 46) and the Motion to Dismiss (ECF No. 47) are DENIED.

IT IS SO ORDERED.

Dated January 4, 2017.

_____
ROBERT C. JONES
United States District Judge